IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| LUIS LEDESMA and | § | C.A. NO. 3:15-cv-00177 |
| DAVID PAUL GONZALES | § | |
| | § | |
| VS. | § | |
| | § | |
| AIRBUS HELICOPTERS, INC. f/k/a | § | |
| AMERICAN EUROCOPTER CORP. | § | |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANT'S
RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

COME NOW Plaintiffs, Luis Ledesma and David Paul Gonzales (collectively "Plaintiffs"), and, provide the Court with the following Sur-Reply following Defendant's Reply (Doc.14) to Plaintiffs' Response in Opposition to the Rule12(b)(6) Motion to Dismiss for Failure to State a Claim ("Motion", Doc. 8).

Defendant in its Reply asserts that because the ill fated aircraft that injured the Plaintiffs, transporting Jones Act seamen in an emergency repatriation off of a vessel located in the Gulf of Mexico of an ill seaman[1], is not maritime because the craft did not hit the water so that maritime law should not apply.  Defendant's allegations are misplaced.

---

[1] The offending helicopter was called by the Jones Act employer because one of the Plaintiffs required repatriation for a heart problem.  Repatriation is an "established principle of American maritime law that seamen injured in the service of their ship are entitled to maintenance and cure, to wages to the end of the voyage, and to be transported home at the expense of the ship." *The Law of Seamen,* 18:2 (5th ed.).

The relevant authority (including some relating to this very Defendant) is replete with language that the ferrying of Jones Act seamen (or other offshore workers not even assigned to a vessel) from offshore and back is a maritime activity even when performed by a helicopter. *See e.g. Ledoux v. Petroleum Helicopters, Inc.*, 609 F.2d 824 (5th Cir. 1980) (admiralty jurisdiction existed because the helicopter was being used in place of a vessel to ferry personnel and supplies to and from offshore drilling structures in the Gulf of Mexico); *Smith v. Pan Air Corp.*, 684 F.2d 1102 (5th Cir. 1982) (the helicopter while it is being used in place of a vessel to ferry personnel and supplies to and from an offshore drilling structure bears the type of significant relationship to traditional maritime activity necessary to invoke admiralty jurisdiction); *Turbomeca, S.A. v. Era Helicopters LLC*, 536 F.3d 351, 353 (5th Cir. 2008); *Preston v. Frantz*, 11 F.3d 357, 359 (2d Cir. 1993) (cases collected); *Blome v. Aerospatiale Helicopter Corp.,* 924 F.Supp. 805, 808-09 (S.D. Tex. 1996) *aff'd sub nom. Blome v. Aerospatiale Helicop,* 114 F.3d 1184 (5th Cir. 1997) (the nexus to traditional maritime activity requirement is likewise satisfied, because, by transporting a Coast Guard inspector from shore to a vessel, the helicopter was performing an activity traditionally performed by vessels); *Brown v. Eurocopter*, 38 F. Supp. 2d 515  (S.D. Tex. 1999) (Admiralty jurisdiction applied because the use of helicopters to transport personnel to and from offshore drilling platforms is close enough in spirit to the use of boats to perform such tasks to show the necessary relationship to traditional  maritime activity); *Williamson v. Petroleum Helicopters, Inc.*, 32 F. Supp. 2d

456, 457 (S.D. Tex. 1999) (same); *Garrett v. Air Logistics, Inc.*, 1996 WL 492300 (E.D. La. Aug. 26, 1996) (same).[2]

Despite the clear language of the authority, Defendant attempts to make a distinction between an injury causing incident that actually hits the water and one that still injures the Plaintiffs but by fortuity the pilot was able to keep the free falling aircraft above the waves of the Gulf. Defendant gives cursory note to the fact that because the disabled aircraft actually did not crash into the water, there could be no disruption to maritime commerce. In so doing, Defendant mistakes (and attempts to have this Court misapply) the *Grubart* test.

The Supreme Court has made clear that "actual" disruption" is not the test – potential is all that is necessary. *Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, (1995). For instance, the Court states that with respect to the potential for disruption of maritime commerce, the "test turns ... on a description of the incident at an intermediate level of possible generality." *Jerome B. Grubart Inc.*, 513 U.S. at 538. The question is "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id*. at 539. "[I]n determining the existence of such a 'potential hazard,' a court should not consider the particular facts of

---

[2] Neither *Brown* nor *Williamson* gave any consideration of whether the alleged wrong had a potentially disruptive impact on maritime commerce in order to satisfy the second prong of the connection test. Courts have consistently found helicopters transport in oil rig operations satisfies this requirement regardless of whether the activity poses a potential hazard to maritime commerce.

3

the case before it, but 'must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity.'" *Marshall v. Wellcraft Marine, Inc.* 103 F.Supp.2d 1099, 1106-07 (S.D. Ind. 1999) (quoting *Sisson*, 497 U.S. at 497). Because admiralty jurisdiction depends on the potential for disruption to maritime commerce, "the jurisdictional inquiry does not require an assessment of the incident's [actual] effects on maritime commerce." *Id*. at 1106 (*citing Sisson*, 497 U.S. at 497). Admiralty jurisdiction may exist "even though maritime commerce is in no way disturbed." *Id*.

The *Grubart* analysis often turns on how the activity at issue is characterized because "[i]t's possible ... to define any set of circumstances in a way that will appear to have little or no relationship to traditional maritime activity." *Delta Country Ventures, Inc. v. Magana*, 986 F.2d 1260, 1265 (9th Cir. 1993). Although there is inevitably some play in the joints in selecting the right level of generality when [characterizing an activity], the inevitable imprecision is not an excuse for whimsy. The test turns on the comparison of traditional maritime activity to the arguably maritime character of the tortfeasor's activity in a given case." *Jerome B. Grubart, Inc.*, 513 U.S. at 542. Clearly, a ferrying helicopter's unexpected and unexplained free fall that was readily apparent to those nearby, that could have crashed into the vessel it was departing, and that came within feet of the water's surface, could "disrupt maritime commerce." Defendant cannot

4

deny maritime jurisdiction to this ferrying flight of an ill Jones Act seamen by the fortuity that their negligent design did not cause the craft to actually hit the vessel or the water.[3]

Defendant's second argument in Reply once again re-states its argument on Motion that Plaintiffs have failed to sufficiently plead facts to pass 12(b)(6) muster. Defendant is again mistaken as shown by its own authority provided to the Court.

As noted by Judge Barbier of the Eastern District of Louisiana, "[u]nder the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Wright v. Shell Offshore, Inc.*, 2011 WL 690530, at *1, 2 (E.D. La. Feb. 17, 2011), *quoting* Fed. R. Civ. P. 8(a)(2). "The complaint must 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Wright, citing Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346 (2005). "The allegations 'must be simple, concise, and direct.'" *Wright citing* Fed. R. Civ. P. 8(d)(1). Plaintiffs have satisfied each of these requirements.

In the *Wright* decision, the court went on to note "[a] claim is facially plausible when the plaintiff pleads facts that allow the court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the instant case, Plaintiffs have alleged that Defendant, designed,

---

[3] Applying Admiralty jurisdiction to a craft that does not crash is not unheard of as Defendant implies. The Court in *In re Air Disaster Near Honolulu, Hawaii on Feb. 24, 1989*, 792 F. Supp. 1541 (N.D. Cal. 1990), applied Admiralty jurisdiction over claims resulting from an aircraft's cargo door and a portion of its fuselage separating in-flight over the sea. The plane did not crash. *Id*.

manufactured, and supported the operation of an aircraft (including training of the pilots) operating in the Gulf of Mexico that suffered an unexpected and unexplained free fall with Jones Act seamen aboard that clearly caused injury, and could have caused death, if it had hit the water, and if it had hit the platform, massive destruction. As in the *Wright* decision, Plaintiffs have pled enough facts to allow the Court to draw an inference that the Defendant has liability.

Moreover, as also stated in *Wright*, "[g]iven the limited discovery expected of plaintiffs at the pleadings stage of the litigation and the strict liability imposed on product manufacturers, Plaintiffs' lack of certain specific factual allegations as to Defendant . . . does not necessitate a dismissal of those claims." *Wright v. Shell Offshore, Inc.*, 2011 WL 690530.

Plaintiffs respectfully request that Defendant's Motion to Dismiss be denied, or in the alternative that they be allowed to re-plead if the Court finds that additional pleading is required to satisfy 12(b)(6).

Respectfully submitted,

*/s/ Francis I. Spagnoletti*
Francis I. Spagnoletti
SBN 18869600 / SDTX ID 5369
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:   713-653-5600
Facsimile:   713-653-5656
Email:       fspagnoletti@spaglaw.com

**OF COUNSEL**:

SPAGNOLETTI & CO.
Jerry C. von Sternberg
SBN 20618150 / SDTX ID 11583
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:   713-653-5600
Facsimile:    713-653-5656
Email:            jvs@spaglaw.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

     I certify that a copy of the this pleading has been served upon all counsel of record by the Court's CM/ECF electronic notice system, at the time of filing on October 2, 2015, in accordance with the Federal Rules of Civil Procedure.

                                                     */s/ Francis I. Spagnoletti*
                                                     Francis I. Spagnoletti