United States District Court
Southern District of Texas
**ENTERED**
September 23, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| LUIS LEDESMA and § | |
| DAVID PAUL GONZALES, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 3:15-cv-00177 |
| § | |
| AIRBUS HELICOPTERS, INC. f/k/a § | |
| AMERICAN EUROCOPTER CORP., § | |
| § | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Luis Ledesma and David Paul Gonzales, bring this lawsuit against Defendant Airbus Helicopter, Inc., for "severe and debilitating" physical injuries they suffered while traveling in a helicopter from the *West Pegasus*, a semisubmersible drilling rig in the Gulf of Mexico, to Matamoros, Mexico. Plaintiffs allege that, during the flight, the helicopter "unexpectedly and without warning, incurred a free fall toward the surface of the water." They bring claims for strict products liability, as well as negligence and gross negligence, asserting the helicopter was negligently designed and manufactured, and that Airbus negligently failed to train pilots or warn of the helicopter's defects. Plaintiff Ledesma is a resident of Arizona, Plaintiff Gonzales is a resident of Louisiana, and Airbus is a "foreign corporation with its principal place of business in Texas." Plaintiffs allege that this Court has jurisdiction under 28 U.S.C. § 1333 because "the suit involves admiralty and maritime jurisdiction."

Airbus has moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), contending that (1) maritime jurisdiction does not exist over these claims, (2) Plaintiffs' Complaint is time-barred, and (3) Plaintiffs' Complaint fails to state a claim for which relief may be granted.

## APPLICABLE LAW

### A. Rule 12(b)(6) Standards

Traditionally, a motion to dismiss under Rule 12(b)(6) for failure to state a claim is viewed with disfavor and is rarely granted. *See Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009); *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 570 (5th Cir. 2005). When considering a 12(b)(6) motion, this Court must construe the complaint liberally in a plaintiff's favor and all well-pleaded facts are taken as true. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 55-56 (2007) ("[A] judge must accept as true all of the factual allegations contained in the complaint."); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain enough factual content, when taken as true, to "state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. 544, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556; *Iqbal,* 556 U.S. 662, 664.

Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555). As held in *Twombly,* the pleading standard under Rule 8 of the Federal Rules of

Civil Procedure does not require "detailed factual allegations," but "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 550 U.S. at 545. A complaint that merely offers conclusory allegations, "formulaic recitation of the elements of a cause of action" or "naked assertion[s]" without "further factual enhancement" will not do. *Id. at* 555-57.

In considering a motion to dismiss, a court ordinarily must limit itself to the contents of the pleadings and attachments thereto. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). "Documents that a defendant attaches to a motion to dismiss are [also] considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.*; *see also Kane Enters. v. MacGregor (USA), Inc.,* 322 F.3d 371, 374 (5th Cir. 2003).

### B. Admiralty Jurisdiction/Statute of Limitations

Although much of its briefing is devoted to maritime jurisdiction, the real thrust of Airbus' argument here is that the statute of limitations has expired. Plaintiffs allege that they were injured on July 13, 2012. Dkt. 1. They filed suit in this Court on July 13, 2015. If their Complaint alleges a claim within this Court's maritime jurisdiction, then the three-year statute of limitations for maritime torts, 46 U.S.C. § 30106, applies and their claims are timely. On the other hand, if the Court finds that this is <u>not</u> a maritime case, then Airbus contends that Plaintiffs' claims are time-barred, whether they are analyzed under the laws of Texas, where Airbus is located; the laws of Arizona and Louisiana, the home states of the Plaintiffs; or the laws of Mexico, where the helicopter landed.

Both Plaintiffs and Airbus agree that the applicable framework under which this Court must examine whether maritime jurisdiction exists, and thus maritime law applies, is provided by *Grubart, Inc., v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995). Under *Grubart*, "a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity." *Id*. at 534.

Under the "location" inquiry, a plaintiff must show that the alleged "tort either occurred on navigable waters, or if the injury is suffered on land, that it was caused by a vessel on navigable waters." *Richard H. Hufnagel v. Omega Service Industries, Inc.,* 162 F.3d 340, 351 (5th Cir. 1999) (citing *Grubart,* 513 U.S. at 534). The second step, "connection," involves a two-pronged analysis: (1) whether the incident, described in general characteristics, has a potentially disruptive impact on maritime commerce; and (2) whether the general character of the alleged tortious conduct giving rise to the incident has a substantial relationship to maritime activity. *Id.* (internal citations omitted).

**1. Location Test**

Airbus apparently concedes that, under the facts and causes of action alleged in the Complaint, the helicopter's free fall over the Gulf of Mexico satisfies the location test's requirement that the tort occurred "on navigable waters."  This accords with the Fifth Circuit's direction that, in applying *Grubart's* location test in a products liability case, "[t]he court must consider where the wrong 'took effect' rather than the locus of the tortious conduct." *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.,* 815 F.3d 211, 216 (5th Cir. 2016), *order clarified on reh'g sub nom., Petrobras Am., Inc. v. Vicinay Cadenas,*

*S.A.*, No. 14-20589, 2016 WL 3974098 (5th Cir. July 22, 2016); s*ee also Woessner v. Johns–Manville Sales Corp.,* 757 F.2d 634, 638 (5th Cir. 1985) ("[T]he locality requirement is satisfied where a defective product furnished in the construction of a ship later caused damage or injury on navigable waters, even though the defendant's alleged wrong occurred on land.").

### 2. Connection Test

Next, the Court turns to "connection." Plaintiffs allege that the helicopter was providing an "air taxi" service, transporting them from the offshore drilling rig to the Mexican mainland. Airbus contends these allegations do not satisfy the connection test under *Grubart* and later cases. In evaluating the "connection" under *Grubart*, the Court must consider: (1) whether the incident, described in general characteristics, has a potentially disruptive impact on maritime commerce; and (2) whether the general character of the alleged tortious conduct giving rise to the incident has a substantial relationship to maritime activity. *Id*. (internal citations omitted). According to Airbus, neither of these conditions are satisfied.

#### a. Potentially disruptive impact on maritime commerce

Airbus first points out that, unlike the vast majority of cases involving air transportation and maritime jurisdiction, the helicopter in this case did not actually make contact with the water—"Plaintiffs do not allege that a crash occurred, or that the Helicopter, or any part of it, touched the water. . . . The Incident was nothing more than a temporary loss of altitude." Further, Airbus argues that Plaintiffs have not sufficiently alleged that the helicopter had the potential to disrupt maritime commerce, *i.e.*, Airbus

argues that there must have been some risk to commercial vessel traffic. While Airbus' argument has some logical merit, case law from this Court and the Fifth Circuit dictate the contrary result.

In *Petrobras*, the Fifth Circuit noted that, "the question is 'whether the incident could be seen within a class of incidents that posed more than a fanciful risk' to maritime commerce" and "[t]he proper focus is on 'potential effects, not the 'particular facts of the incident.'" *Petrobras*, 815 F.3d at 217 (citing *Grubart* at 538, 115 S.Ct. at 1051). In answering this question, the Court should "assess the general features of the type of incident involved" to determine whether the incident has a "potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534. Such an assessment should be at "an intermediate level of generality." *Id*. at 534. Some guidance from other cases illustrates the proper approach to this inquiry.

In *Scarborough v. Clemco Industries*, the Fifth Circuit analyzed claims by a seaman who contracted silicosis after working aboard sandblasting vessels over an eight-year period. 391 F.3d 660, 665 (5th Cir. 2004). The Fifth Circuit assessed his activity at an intermediate level of generality as "injury to a Jones Act seaman due to the negligence of a non-employer." *Id*. at 665. Using that description, the court held "it is clear that the sandblasting activity is of the sort with potential to disrupt maritime activity." *Id*. In *Louviere v. American Helicopters*, the United States Magistrate Judge C. Michael Hill analyzed a claim for injuries sustained during an offshore helicopter's engine problems and subsequent water landing as an "injury to a non-seaman while being transported in the functional equivalent of a vessel to an offshore production facility (island) to do

repair work." No. 03-1503, 2005 WL 2260718 (W.D. Louisiana Sept. 16, 2005). "Given the broad interpretation given by the courts to the potentially disruptive impact requirement, this court has no trouble concluding that the activity at issue had the potential for affecting maritime commerce." *Id*. at *3  (citing *Sisson v. Ruby*, 497 U.S. 358, 363, 110 S.Ct. 2892, 2896, 111 L.Ed.2d 292 (1990) (fire on a non-commercial vessel docked in a marina held to have a least a potentially disruptive effect on maritime commerce) and *Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982) (the collision of two pleasure boats on a navigable inland waterway seldom if ever used for commerce held to have had at least a potentially disruptive effect on maritime commerce)).  Similarly, this Court has also held that the "sinking of an aircraft in navigable waters is well within that class of incidents [that pose more than a fanciful risk to commercial shipping]*."* *Williamson v. Petroleum Helicopters, Inc*., 32 F. Supp. 2d 456, 459 (S.D. Tex. 1999) (holding *Grubart* connection test satisfied where helicopter ferrying workers between offshore platforms experienced mechanical problems, ultimately crashing into stationary platform and then falling into sea).

In this case, at an intermediate level of generality, the Court describes the activity alleged in the Complaint as: physical injuries two passengers sustained while being transported in the functional equivalent of a vessel from an offshore semisubmersible drilling rig to the mainland.  Under the authorities cited above, the Court finds that Plaintiffs have alleged a "potentially disruptive impact on maritime commerce."

### b. Substantial relationship to traditional maritime activity.

Next, the Court examines "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at 534. Both the Supreme Court and the Fifth Circuit have held that the use of helicopters to ferry passengers and supplies to and from offshore rigs satisfies this test:

> Although the decedents were killed while riding in a helicopter and not a more traditional maritime conveyance, that helicopter was engaged in a function traditionally performed by waterborne vessels: the ferrying of passengers from an "island," albeit an artificial one, to the shore.

*Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 218–19 (1986) (citation omitted); *Ledoux v. Petroleum Helicopters, Inc.*, 609 F.2d 824, 824 (5th Cir. 1980) ("[t]he crash of the deceased's helicopter, while it was being used in place of a vessel to ferry personnel and supplies to and from offshore drilling structures, bears the type of significant relationship to traditional maritime activity which is necessary to invoke admiralty jurisdiction."); *see also Alleman v. Omni Energy Services Corp.*, 580 F.3d 280, 285 (5th Cir. 2009) (noting, "helicopter transport to offshore platforms bears a 'significant relationship to a traditional maritime activity' and essentially replaces a 'function traditionally performed by waterborne vessels.'"); *Cheramie v. Panther Helicopters, Inc.*, No. 14-1597, 2015 WL 693221, at *3 (E.D. La. Feb. 18, 2015).

The allegations in the Plaintiffs' Complaint have sufficiently alleged a maritime tort, maritime law therefore applies. Under the three-year statute of limitations for maritime torts, this case is timely filed.

### C. Motion to Dismiss

Next, the Court turns to the contention that the Plaintiffs' Complaint fails to state a claim under *Twombly* and the relevant authorities.

Quite understandably, Airbus complains of Plaintiffs' spare pleading style. Airbus first particularly notes that the Plaintiffs have not alleged the specific reason they believe the helicopter lost altitude. Although it is a close call, the Court is mindful that, at this stage, the Fifth Circuit has found that requiring plaintiffs in a product liability lawsuit "to plead extremely 'detailed factual allegations' that satisfy each element of a products liability action . . . creates a situation where a manufacturer will not be held liable for defective products because it has sole possession of the necessary document[s] to ultimately prove the claim." *Flagg v. Stryker Corp.*, 647 Fed. Appx. 314, 317 (5th Cir. 2016) (noting, "Perhaps after discovery Flagg will not prevail, but at a pre-discovery stage of this case, in an area of law where defendants are likely to exclusively possess the information relevant to making more detailed factual allegations, we cannot say that he is merely on a fishing expedition."). Here, Plaintiffs have alleged that there were "deficiencies or defects in the helicopter, its operating system, and/or its component parts" that caused it to go into free fall during normal flight operations, thereby seriously injuring its passengers. Again, the Court notes that this is a very close call. But, as in *Flagg*, the Plaintiffs here have "plausibly alleged enough information that, with discovery, [they] could prove the Manufacturing Defendants are liable . . ." *Flagg v. Stryker Corp.*, 647 Fed. App'x. 314, 319 (5th Cir. 2016).

Similarly, the Plaintiffs have alleged that Airbus negligently failed to train the pilots and failed to warn of the helicopter's known defects, including failing to issue and distribute maintenance manuals and service bulletins. Whether or not Airbus had an actual duty under the facts to train or to warn is not the issue here—the Plaintiffs have alleged a clear theory of liability, and they have supported it with the bare minimum of factual allegations. The same is true for damages—Plaintiffs seek to recover for physical injuries that they sustained during the helicopter's free fall, and they allege that those damages were severe, painful, and causing lasting physical disfigurement and impairment.

On a motion to dismiss, when the cause of action requires specific elements to be proven, the plausibility "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.,* 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Albeit barely, Plaintiffs have done so here.

## CONCLUSION

After reviewing Defendant's Motion to Dismiss, the response, the briefing, and the record in this case, the Court finds that the Motion to Dismiss should be **DENIED**. Additionally, Defendant's Objection to and Motion to Strike Plaintiff's Sur-Reply is also **DENIED**.

SIGNED at Galveston, Texas, this 23rd day of September, 2016.

*George C. Hanks Jr.*
George C. Hanks Jr.
United States District Judge